**FILED**

2005 Dec-09  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **CASE NO.:   CR-03-B-0531-S** |
| | ) | |
| KENNON R. PATTERSON, SR., et al. | ) | |
| | ) | |
|     Defendant. | ) | |

<u>**SENTENCING MEMORANDUM ON BEHALF OF
DEFENDANT KENNON R. PATTERSON, SR.**</u>

Through counsel, Defendant Kennon R. Patterson, Sr. files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Attached as exhibits to this Sentencing Memorandum are the following:

A.     Letter from Mr. Patterson's doctor, Andres Forero, MD, dated November 22, 2005, attached hereto as Exhibit A;

B.     Photograph of Mr. Patterson's current home, attached hereto as Exhibit B;

C.     Letters from friends and family of Mr. Patterson, attached hereto as Exhibit C;

D.     Memorandum Opinion of July 8, 2005 in case of United States of America v. Steve Randy Holland, CR-94-AR-263-NE, attached hereto as Exhibit D; and

E.     Opinions in <u>United States v. Peterson</u>, <u>United States v. Milne</u>, <u>United States v. Burk</u>, and <u>United States v. Null</u>, attached hereto as Exhibit E.

## **TABLE OF CONTENTS**

Sentencing under Booker . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Application of the Statutory Sentencing Factors to the Facts of this Case . . . . . . . . . . . 7

    1.    The Nature and Circumstances of the Offense and the
           History and Characteristics of the Offender [18 U.S.C. §3553(a)(1)] . . . 7

    2.    The Need for the Sentence Imposed To Promote Certain
           Statutory Objectives [18 U.S.C. § 3553 (a)(2)] . . . . . . . . . . . . . . . . . . . 13

    3.    The Kinds of Sentences Available [18 U.S.C. § 3553(a)(3)] . . . . . . . . . 16

    4.    The Sentencing Range Established by the Sentencing
           Commission [18 U.S.C. § 3553 (a)(4)] . . . . . . . . . . . . . . . . . . . . . . . . . 16

    5.    The Need To Avoid Unwarranted Disparities
           [18 U.S.C. § 3553 (a)(6)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    6.    The Need To Provide Restitution To Any Victims Of The
           Offense [18 U.S.C. § 3553 (a)(7 )] . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Proposed "Statement of Reasons" Pursuant to 18 U.S.C. § 3553(c)
For Sentence Below Guideline Range . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Sentencing under *Booker***

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act,

as revised by <u>Booker</u>,

> requires a sentencing court to consider Guidelines ranges, see
> 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court
> to tailor the sentence in light of other statutory concerns as well,
> see § 3553(a).

<u>Booker</u>, 125 S. Ct. at 757. Thus, under <u>Booker</u>, sentencing courts must treat the guidelines

as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to
        provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training,
        medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing

courts to consider the following factors:

1)      "the nature and circumstances of the offense and the history and
        characteristics of the defendant" [§ 3553(a)(1)];
2)      "the kinds of sentences available" [§ 3553(a)(3)];
3)      "the need to avoid unwarranted sentence disparities among defendants with
        similar records who have been found guilty of similar conduct" [§3553(a)(6)];
        and
4)      "the need to provide restitution to any victims of the offense." [§3553(a)(7)].

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 years of age at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, ___ F. Supp. 2d__ , 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part

because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in <u>Roper v. Simmons</u>, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of <u>Booker</u> and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in <u>Booker</u>, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in <u>Booker</u>, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." <u>United States v. Ranum</u>, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in <u>Booker</u>." <u>United States v. Jaber</u>, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). <u>See also</u> <u>United States v. Ameline</u>, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), <u>reh'g en banc granted</u>, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. <u>See</u> <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## **Application of the Statutory Sentencing Factors to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

### **1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender [18 U.S.C. § 3553 (a)(1)]**

The jury found Ken Patterson guilty of conspiracy and bank fraud.  However, at the

same time, it found him not guilty of the charges that he used funds he borrowed from the Bank for purposes other than his house and farm.  It in essence found that Mr.  and Mrs. Hamaker were paid by the Bank for work on the Patterson farm, and were also paid by Ken Patterson for that work. In the Hamaker's trial the jury specifically found no fraud in connection with the Hamaker's work on Mr.  Patterson's farm.  The jury in the Hamaker case found the Hamakers should forfeit $178,500 finding only that the Hamakers had overcharged the Bank that amount in connection with the Guntersville project.   In accordance with that finding, Judge Bowdre ordered the Hamakers to pay restitution to the Bank in the amount of $178,500.  The Hamakers were sentenced to eighteen months custody and five years suspended release.  During remand to the district court in that case, Judge Bowdre specifically found the Government's evidence was insufficient to find the Hamakers guilty of any fraud other than submitting bills to the Bank for work on the Guntersville project after the work stopped there.

The evidence reflects Mr.  Patterson paid over $5 million dollars for the construction of his house.  The Bank held a mortgage on the house and twenty acres on which the house sat.  All work done by the Hamakers and others on the house served to increase the value of the Bank's security.  The Bank has now foreclosed on the house and has received the benefit of all work done in constructing the house.

There was no evidence of any agreement between Mr.  Patterson and anyone else for the Bank to pay for work done on his house.  There was no evidence of any agreement for

Community Bank to be billed for work done for Mr. Patterson's benefit. Mr. Patterson intends to appeal his conviction.

Ken Patterson is 63 years old, having been born in Talladega, Alabama on July 26, 1942. He was reared by his parents in Etowah County and has lived in Alabama almost all of his life. He was not born into a wealthy family.

After he graduated from Southside High School in Gadsden in 1961, he enlisted in the United States Army as a private. He served for almost three years at Fort Benning and received an honorable discharge in 1964. While he was in the Army he married his wife Carolyn in 1963. They have now been married for almost 42 years. They have three children, Carol Schauer, Kennon Ray Patterson, Jr.(Chip), and Joseph Ray Patterson (Joey). All of their children are married. The Pattersons have six grandchildren and two step-grandchilren.

After his military service, Mr. Patterson first worked in the finance business, for Liberty Loan Corporation in Anniston in 1964. Except for short periods of employment with Avondale Mills and as a part owner of a furniture store, he remained in the finance industry until November, 1977, working for Liberty Finance Corporation, TransAmerica Financial Corporation, and Security Mutual Finance Corporation..

Mr. Patterson attended junior college under the GI Bill while he was working in the finance industry, but did not receive a degree. He does not have a college degree but did complete a course in banking at Midsouth School of Banking.

In November, 1977 Mr. Patterson accepted a position as Assistant Vice President with the Bank of Arab in Arab, Alabama. Over the next several years he received several promotions and became Executive Vice President of the Bank of Arab. In March of 1983 he was hired as the President of the Bank of Blountsville in Blountsville, Alabama. In 1985 Mr. Patterson and several others formed Community Bancshares, a bank holding company, and Mr. Patterson became President and Chairman of the Bank. The holding company acquired all of the stock of the Bank of Blountsville, and the name of the bank was changed to Community Bank.

Under Mr. Patterson's leadership, the Bank grew from approximately $34 million dollars in assets in 1983 to approximately $750 million dollars in assets in 2000. During that time the Bank grew from one location to thirty-two locations.

In early 2003, Mr. Patterson was terminated from all positions with Community Bank and Community Bancshares. It is important to note that he was <u>not</u> terminated for the alleged conduct made the subject of this criminal case. Instead, he was terminated for allegedly concealing from the Bank Board of Directors his filing of Chapter 11 Bankruptcy, while at the same time asking the Board to release a second mortgage it held on certain property. In fact, Board members were aware of Mr. Patterson's impending bankruptcy, and the release of the second mortgage was not improper, insofar as it had been given only in an attempt to satisfy the regulators and it had not served that intended purpose.

In late 2003, Mr. Patterson was diagnosed with lymphoma, which his doctor

characterizes as an "advanced disease".  A letter from Dr.  Forero is attached as Exhibit A.

The disease is incurable and, according to his doctor, tends to reoccur after treatment.  Dr.

Forero states that he is currently in remission "but he will clearly relapse in the future."  He

needs continuing monitoring by his physician and will need aggressive radiation or

chemotherapy when his condition reoccurs.  Imprisonment in a penitentiary would disrupt

his medical care and disrupt his relationship with the doctor who has been treating him for

this very serious and advanced disease for over a year.  Imprisonment would be in conflict

with the stated sentencing purpose to permit a defendant to receive needed medical care "in

the most effective manner." 18 U.S.C §3553(a)(2)(D).  On the other hand, incarceration in

a half-way house followed by home confinement with an exception for medical treatment

would permit Mr.  Patterson to continue to receive the medical treatment which he will

require.

As a result of the criminal charges and convictions, Mr.  Patterson and his family

have moved to Notasulga, Alabama.  Mr.  Patterson and his wife live in a modest house

owned by is daughter, Carol Schauer.  A photograph of that residence is attached as Exhibit

B.  All three of his children, Carol Schauer, Chip Patterson, and Joey Patterson, live nearby.

Because Mr.  Patterson is so close to his family, both emotionally and physically, Mr.

Patterson's conviction, loss of his positions with the Bank, and loss of his home have been

devastating to the whole family.

Chip worked for Community Bank from 1985 until around May, 2000.  He also

assisted his father in operating the farm and ranch.  After the allegations arose, he resigned from the Bank.  He completed a ranch management program at Texas Christian University, a bachelor of science degree in Agri-economics from Auburn University, and finished his classroom work for a Masters degree in Agri-economics from Auburn in the Summer of 2004.  In spite of his extensive work experience in banking and banking education including a Graduate School of Banking degree from LSU, and his degrees in agriculture, he has been unable to find a job in banking or agriculture or any other field despite extensive efforts both in Alabama and elsewhere.  Chip remains unemployed at the present time.  It was his desire to go to Veterinary School after receiving his Masters degree, but he has no funds to do so and Mr. Patterson does not have the money to help his son.

Mr. Patterson's son Joey completed his degree in Animal Science at Auburn University in 2003 and wanted to go to Veterinary School.  He had no money to do so and is employed selling used cars in the Auburn area.

Mr. Patterson's daughter, Carol Schauer, was diagnosed with breast cancer in late 2003, and underwent chemotherapy and radiation treatment.  Breast cancer recurred in the Summer of 2005 and she is still undergoing treatments every three months.  Her husband, Doug Schauer, has suffered since 2002 from a mysterious illness which attacked his nervous system, causing paralysis.  He has undergone extensive treatments, including treatment at the Mayo Clinic, and has regained his ability to walk.  His still has medical problems, however, including pain in his legs and hands.

2.      **The Need for the Sentence Imposed To Promote Certain Statutory Objectives [18 U.S.C. § 3553 (a)(2)]:**

(A)     **to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

(B)     **to afford adequate deterrence to criminal conduct**

(C)     **to protect the public from further crimes of the defendant**

(D)     **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

There is simply no need for a lengthy period of incarceration given the facts and circumstances here. While Mr. Patterson intends to appeal his conviction, even if his convictions are ultimately reversed, he has been severely punished - he has lost his positions as Chairman of the Board of Community Bancshares and Chairman of the Board and Chief Executive Officer of Community Bank; he has lost all positions and all income from the Bank. He has lost his home and farm which has been sold by the Bank. Given this case, he will never again be able to work in any capacity in the banking industry regardless whether his convictions are reversed. He will forever have to live with the loss of his reputation built over a lifetime. As noted earlier his house, the subject of this case, has been foreclosed on and taken over by the Bank and, as the Presentence Report reflects, Mr. Patterson has few assets left. All of these serious, irreparable, devastating consequences meet the requirements of § 3553 (a)(2) for a sentence to reflect the seriousness of the offense and afford adequate deterrence.

Our federal sentencing system, unfortunately, during the mandatory guidelines era, overlooked the significant impact a criminal charge, trial and conviction have on a person's life, particularly one  who has never before been in trouble, and who otherwise has been a law abiding citizen.  The mere fact of the charge under such circumstances for a person of Mr. Patterson's age and stature is devastating.    In this case, these charges and convictions, the family's problems, many from the convictions, and the health problems they have experienced, have nearly overwhelmed Mr. Patterson's entire family.  His dedication to his family and theirs to him have been inspirational.  He and his entire family have already been punished severely; no lengthy term of imprisonment is needed to reflect the seriousness of the offense or afford adequate deterrence.

Neither is lengthy imprisonment needed to protect the public from further crimes by Mr. Patterson.  As noted by Judge Simon in <u>United States v. Nellum</u>, 2005 WL 30073, 2005 U.S. Dist. LEXIS 1568 (N. D. Ind. Feb. 3, 2005), the U.S. Sentencing Commission in a May 2004 report has found that recidivism decreases with age.  Judge Simon took that fact into consideration in sentencing a defendant who was 57 years of age.  Mr. Patterson is 63 years old.  He is not a threat to the public, particularly because this conviction will preclude him from ever being employed in the banking industry again.

On the other hand, unless his convictions are reversed, if Mr. Patterson were sentenced to 121 to 151 months as suggested by the probation officer, he will be 73 to 75 years old before he is released from prison.  In view of Mr. Patterson's serious, advanced

medical condition, he might well serve the rest of his life in prison. Such a lengthy sentence is not needed to provide deterrence, or to protect the public.

18 U.S.C. § 3553 (a)(2)(D) provides that a court, in determining a sentence, shall consider the need to provide the defendant with needed medical care in the most effective manner. This factor militates very strongly in favor of a sentence structured so as to acknowledge the seriousness of the charges for which he was convicted, but which would also take into account the other significant factors which mitigate against a sentence of incarceration. As noted, Mr. Patterson has an advanced, incurable disease that is expected to relapse in the future. He needs to be seen by his physician, Dr. Forero at the UAB-Kirklin Clinic every three months. Imprisonment would disrupt Mr. Patterson's medical care. Incarceration in a half-way house followed by home confinement with an exception for medical treatment would permit Mr. Patterson to continue to receive the medical treatment which he will require.

Mr. Patterson has no prior criminal record, has been a good citizen, and is a person of good character. The numerous letters submitted (See Exhibit C) in support of Mr. Patterson attest to that. The Court is urged to review and consider all of these letters. There clearly can be fashioned a just sentence which satisfies all of the relevant factors, without incarceration in a federal institution. Mr. Patterson is obviously not a threat to the public, and it is inconceivable that he will ever be allowed to work in the banking industry again. Service in a half-way house combined with a period of electronic monitoring, followed by supervised release, would be a just sentence.

**3.     The Kinds of Sentences Available [18 U.S.C. § 3553(a)(3)]**

Since, under <u>Booker</u>, the guidelines are now advisory, the sentencing table and the restrictions on sentences of home confinement and split sentences found in the guidelines are also advisory.  The only restrictions on sentencing are those imposed by statute.  The only restriction in Mr.  Patterson's case is the prohibition in 18 U.S.C. §3561(a) that an individual convicted of a class A felony cannot be sentenced to a term of probation.  Thus, Mr.  Patterson is eligible for any kind of sentence other than probation.

As argued elsewhere, the purposes of sentencing would be served by sentencing Mr. Patterson to incarceration in a half-way house, followed by a period of home detention, followed by supervised release.  <u>United States v.  Anderson</u>, 365 F.  Supp.  2d 67, 68 (D. Me. 2005) is a recent example of such a split sentence.  In <u>Anderson</u>, the judge concluded that due to the defendant's family circumstances, a split sentence of nine months in prison and nine months home confinement would be the appropriate sentence.

**4.     The Sentencing Range Established by the Sentencing Commission [18 U.S.C. § 3553 (a)(4 )]**

The Probation Office computed a guideline range of imprisonment of 121 to 151 months based on a total offense level of 32 and a criminal history category of one.  We contend the guideline range is incorrect because the offense level is incorrect, for the following reasons.

An increase in the offense level of 12 based upon the conclusion that the offense involved a loss of more than $1,500,000.00 but not more than $2,500,000.00 is incorrect. First of all, there is no basis disclosed in the Presentence Investigation Report for the amount of the loss other than the Government contends the evidence establishes a loss of that amount.

The amount of the loss that the Government argues for is inaccurate for the reasons stated in our Objections to the Presentence Report (See pages 6-8).  Without waiving the arguments made at trial, and which will be made on appeal, the loss should be found to be no greater than $596,367.99, which would result in an increase of 10 levels, rather than 12.

In actuality, the Court should find there is no loss.  Application Note 8 to U.S.S.G. § 2F 1.1 indicates that the amount of loss is the greater of either the actual loss or the intended loss.  Application Note 8 also refers to the discussion in the commentary to U.S.S.G. § 2B 1.1 for valuation of loss.  The current commentary to section 2B 1.1, in Application Note 3(A) specifically provides that loss is the greater of actual loss or intended loss.  However, Application Note 3(E)(ii) provides that actual loss shall be reduced by, "In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing."  Since Mr. Patterson mortgaged the property in question to the Bank and the Bank has recovered that property and sold it for $10 million dollars, there is no

actual loss. The loss, then, would be the <u>intended</u> loss. There is no evidence Mr. Patterson intended any loss. The evidence is the Bank held a mortgage on the property in question and the construction performed by Morgan City and J&M Materials increased the value of the property. There is no evidence Mr. Patterson intended otherwise. Therefore, there is no actual loss or intended loss, and no increase above the base offense level of 6. <u>See</u> <u>United States v. Lee</u>, 427 F.3d 881, 895 (11th Cir. 2005)("When considering the impact of recovered collateral, or the return of money, property, or services, to the victim, the guidelines treat those so recovering as having suffered a loss but then allow the defendant to take credit against the total loss for the value of the recovered or returned loss."). <u>See</u> <u>also</u> <u>United States v. Tatum</u>, 138 F.3d 1344 (11th.Cir. 1998).

The Probation Officer erroneously concluded the offense involved more than minimal planning, erroneously adding two points. There was absolutely no evidence of any "close coordination" or any coordination of any kind between Mr. Patterson and the Hamakers or anyone else to create and approve fraudulent invoices.

The Probation Officer erroneously concluded Mr. Patterson derived more than $1,000,000 in gross receipts from the offense and therefore erroneously added 4 points pursuant to U.S.S.G. §2 F 1.1(b)(7)(B). The Government's evidence at trial was that Mr. Patterson received the benefit of 61,589.5 hours of work from MCC employees valued at $691,627.58. The evidence is undisputed Mr. Patterson paid MCC $571,928.55 for its labor. There is no basis for concluding Mr. Patterson derived more than $1,000,000 in gross receipts from the offense.

The Probation Office erroneously concluded the offense level should be increased by 4 levels, finding Mr. Patterson to be an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive (U.S.S.G. §3B 1.1(a)). There should be no enhancement for Mr. Patterson as an organizer or leader of a criminal conspiracy. "[T]he sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because §3B 1.1(a) is an enhancement for organizers or leaders, not for important or essential figures." United States v. Anderson, 189 F. 3d 1201, 1211 (10th Cir. 1999)(holding district court erred in applying enhancement for role in the offense). There is no evidence that Mr. Patterson organized, lead, managed, or supervised any criminal activity. To the contrary, the evidence was clear that Mr. Patterson had little involvement in the day-to-day construction activities for Bank branches or his house. He did not prepare any of the invoices to Community Bank and did not approve any of such invoices for payment. The undisputed evidence is that he barely knew Dewey Hamaker. There was no evidence he met with Dewey Hamaker, Jimmie Childers, Larry Bishop, or anyone else to organize, lead, manage, or supervise a criminal conspiracy.

The Probation Office erroneously increased the offense level by 2 levels for abuse of trust. While there was evidence Mr. Patterson had a position of trust with the Bank, there was no evidence that he used his position to accomplish the alleged conduct. In fact, the Bank employees responsible for approval and payment of invoices specifically testified that

Mr. Patterson in no way influenced them. "For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense." U.S.S.G. § 3B1.3, Application Note 1.

In his revised Presentence Report, the Probation Officer has proposed a 2 point enhancement for obstruction of justice based on post-indictment transfers by Mr. Patterson to his son and daughter. Curiously, the Probation Officer added these points based on no new evidence but simply at the Government's request. Mr. Patterson had fully disclosed and provided documentation of these transfers to the Probation Officer at the very beginning. He never attempted to hide or conceal them. The Officer is correct that Mr. Patterson objects to this enhancement and this is an issue for sentencing. The evidence will not reflect that Mr. Patterson's intent in making these transfers was to defraud, conceal, or obstruct justice.

Removing these erroneously added enhancements, the adjusted offense level for counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 would correctly be 6. For counts 20 and 21, the adjusted offense level would be 17, after removing the erroneously added enhancement for obstruction of justice. For guideline purposes, the combined adjusted offense level and total offense level would be 17. The guideline range for imprisonment for a total offense level of 17 and a criminal history category of one is 24 to 30 months.

When all of the factors considered in this Sentencing Memorandum are given proper weight, it is apparent that a sentence of 24 to 30 months is greater than necessary to achieve

the legitimate purposes of sentencing.  For all of the reasons stated elsewhere in this Memorandum, the Court should impose a split sentence of 6 months of incarceration to be served in a half-way house to enable Mr.  Patterson to continue his medical treatment, to be followed by 1 year of home detention, and 5 years of supervised release, or some similar combination.

### 5.    The Need To Avoid Unwarranted Disparities [18 U.S.C. § 3553 (a)(6)]

Co-defendants Larry Bishop and Jimmie Childers await sentencing by the Court. Dewey Hamaker and Linda Hamaker were charged in 2002 for essentially the same alleged conduct as Mr.  Patterson, Mr.  Bishop, and Mr.  Childers.  The Hamakers were convicted and were each sentenced to 18 months custody, 5 years supervised release, and were ordered to pay $178,500 restitution to Community Bank jointly and severally with each other.  The amount of restitution was the result of the jury's forfeiture verdict following the Hamakers' trial. Judge Bowdre instructed the jury that if they found the Hamakers had committed fraud in connection with the Patterson farm they should return a verdict of $1,686,407, and if in connection with something else then in that amount.  The jury returned a verdict of $178,500, based on overbilling by the Hamakers on the Guntersville project.

A sentence of 121 to 151 months for Mr.  Patterson, as suggested by the Probation Officer, would create an unwarranted disparity between the sentence of Mr.  Patterson and the sentences of Dewey Hamaker and Linda Hamaker.

Of course, 18 U.S.C. § 3553(a)(6) does not limit the Court, in avoiding sentencing disparities, to co-defendants or co-conspirators. The statute speaks of "defendants with similar records who have been found guilty of similar conduct." In this regard, we have searched Westlaw for cases involving other defendants convicted of bank fraud who, like Mr. Patterson, had no prior criminal record and had good work histories and family circumstances. This search, of course, was limited to post-Booker cases, since pre-Booker cases would be governed by the then-mandatory sentencing guidelines and would be inapposite. Our research has revealed four such cases in which the defendant received much less severe sentences than the Probation Office has suggested in this case. Those four decisions are: United States v. Peterson, 363 F.Supp.2d 1060 (E.D. Wisc. 2005); United States v. Milne, 384 F.Supp.2d 1309 (E.D. Wisc.2005); United States v. Burk, 372 F.Supp.2d 104 (D.Maine); and United States v. Null, 2005 WL 1527747 (E.D. Pa. 6/28/05). A copy of these cases are attached as Exhibit E for the Court's convenience.

In United States v. Peterson, the defendant was convicted of bank fraud but had a solid employment history and good family relationship, among other factors. He was sentenced to 1 day in prison followed by 5 years of supervised release, the first 180 days in a community correctional center with work-release privileges and the second 180 days on home confinement also with work-release privileges. In Burk, the district court sentenced the bank fraud defendant to 8 months imprisonment. In Null, the district court sentenced the defendant found guilty of bank fraud to 21 months imprisonment. In Milne, the district

court noted the good character and family circumstances of the defendant convicted of bank fraud, as well as other factors, and found a sentence of 5 months imprisonment, followed by 5 years supervised release with a condition of 5 months home confinement, was the appropriate sentence.  A lengthy term of imprisonment for Mr.  Patterson would create an unwarranted sentence disparity between Mr.  Patterson and these defendants with similar records found guilty of similar conduct.

In fact, this Court need look no further than other recent cases in this District for similar cases.  On December 5, 2005 Judge Propst, in sentencing McWane Inc.  and its executives, did not sentence any of the executives to prison.  Charles Robison, Vice President of Environmental Affairs, who was convicted of filing a false report to the United States Environmental Protection Agency, was sentenced to two years probation and 150 hours of community service.  James Delk, former Vice President and General Manager, who was convicted of conspiring to violate the Clean Water Act, was sentenced to 3 years probation and 6 months of home detention.  Michael Devine, former Plant Manager, was likewise convicted of conspiring to violate the Clean Water Act and was sentenced to 2 years probation and 3 months of home detention.

The Court should also consider the sentences of the HealthSouth executives and employees who have plead guilty to their roles in the massive fraud involving HealthSouth Corporation.  That fraud, of course, dwarfs the alleged fraud for which Mr.  Patterson was convicted both in terms of length of time the fraud occurred (7 years), the scope of the fraud,

and the damage caused to HealthSouth investors ($1.4 billion).  Four of those executives, Aaron Beam, Weston Smith, Richard Botts, and Michael Martin, have been sentenced post-Booker.  Aaron Beam was convicted of bank fraud and was sentenced to imprisonment for 3 months followed by supervised release for twelve months.  Weston Smith was convicted of conspiracy to commit wire fraud and securities fraud, false certification of financial information filed with the SEC, and filing false reports with the SEC.  He was sentenced to 27 months imprisonment, followed by 12 months supervised release.  Richard Botts was convicted of conspiracy to commit wire fraud, securities fraud, false books and records, and mail fraud.  He was sentenced to 5 years probation, including 6 months home detention.  Michael Martin was convicted of conspiracy to commit wire fraud, securities fraud, and false books and records.  He was sentenced to 7 days imprisonment, followed by supervised release for 24 months.  Kenneth Livesay was sentenced pre-Booker and was given probation and home detention .  His sentence was vacated on appeal and remanded for re-sentencing.  Emery Harris was sentenced pre-Booker to imprisonment for 5 months.  The others, Catherine Fowler, Cathy Edwards, Rebecca Kay Morgan, Virginia Valentine, and Angela Ayers, who were also sentenced pre-Booker, were all given probation.  A lengthy prison sentence for Mr.  Patterson would certainly create an unwarranted sentence disparity between his sentence and those of these HealthSouth executives.

Community Bank is seeking restitution in the amount of $8,098,956.53, of which amount $1,973,377.12 consists of "construction overcharges."  There would be an

unwarranted sentence disparity and a grave injustice if Mr. Patterson were ordered to pay restitution in an amount of almost $2 million dollars for construction overcharges, when the individuals responsible for billing and receiving the vast majority of those "overcharges", Dewey Hamaker and Linda Hamaker, were only found to have overcharged in the amount of $178,500 and were ordered to pay restitution in that amount.

**6.     The Need To Provide Restitution To Any Victims Of The Offense [18 U.S.C. § 3553 (a)(7 )]**

As argued in our objections to the Presentence Report, Community Bank is clearly not entitled to restitution for any amounts claimed other than the alleged "construction overcharges." Further, as to those "construction overcharges" or any other alleged losses, Community Bank has already been made whole and has recouped its losses by foreclosing on Mr. Patterson's Heritage Valley Farms property. According to published reports and the Bank's 8-K filed with the Securities and Exchange Commission on October 12, 2005, the Bank has entered into a contract to sell the Heritage Valley Farms property for $10 Million in cash. The sale may have closed by now. There is no need to provide the Bank any further restitution.

As the Court will recall, the Government included a forfeiture count in the indictment against Mr. Patterson. After the jury's verdict, however, the Government then voluntarily dismissed the forfeiture count. That action by the Government deprived the jury, the Court, and the parties of a determination by the jury of any amount due by Mr. Patterson to the

Bank.  In fact, the Government's actions caused additional damage to Mr.  Patterson in another respect.  In addition to bringing the forfeiture charge in the indictment, the Government obtained an ex parte Restraining Order at the commencement of the criminal prosecution, restraining Mr.  Patterson from selling his house and farm and other assets.  At the time, Mr.  Patterson had listed the house and farm for sale but the Restraining Order prevented any sale.  Additionally, it was the presence of the Restraining Order that led to the dismissal of  Mr.  Patterson's bankruptcy case.  The loss of his job, the inability to sell the house and farm, the dismissal of the bankruptcy case, and the presence of the Restraining Order combined to cause Mr.  Patterson to lose the house and farm through foreclosure by the Bank and to perhaps have had some funds remaining after all parties had been paid.

An additional point is necessary regarding restitution.  As is reflected in our objections to the Presentence Report, Mr.  Patterson objects to any amount of restitution being ordered for Community Bank, Traveler's Insurance Company, or anyone else.  The law of the Eleventh Circuit is that an order of restitution is penal in nature, and constitutes punishment.  See United States v.  Johnson, 983 F.  2d 216, 220 (11th Cir.  1993).  For that reason, under United States v.  Booker and the cases upon which Booker was based, no restitution order can be entered unless and until a jury finds the Defendant's conduct caused the victim's loss and the amount of the victim's compensable loss.  As stated by Judge Acker of this Court in United States v. Steve Randy Holland, CR-94-AR-263-NE, in a Memorandum Opinion dated July 8, 2005:

No one can any longer deny what <u>United States v. Booker</u>, 543 U.S. ____ , 125 S. Ct. 738 (2005) made clear on January 12, 2005, namely, that all facts essential to the imposition of, or the formulation of, a sentence must be proven beyond a reasonable doubt to a jury. Because within the Eleventh Circuit an order of restitution as part of a sentence expressly constitutes a sanction for criminal behavior, restitution orders can no longer be entered in the Eleventh Circuit unless and until a jury finds that the government has met its burden of proving (1) that the Defendant's conduct caused the victim's loss, and (2) the amount of the victim's compensable loss.

<u>United States of America v. Steve Randy Holland</u>, CR-94-AR-263-NE (Memorandum Opinion of July 8, 2005, p. 17)(copy attached as Exhibit D).

### Proposed "Statement of Reasons" Pursuant to 18 U.S.C. § 3553(c) For Sentence Below Guideline Range

Pursuant to 18 U.S.C. § 3553(c)(2), if the Court imposes a sentence outside the Guideline Range, the Court must state the reasons for the imposition of that sentence below the Guideline Range. Those reasons must be stated with specificity in the written order of judgment and commitment. It is submitted that Mr. Patterson should receive a sentence below the Guideline Range for the following reasons:

1.      There is no direct evidence of any conspiracy between Mr. Patterson and anyone else related to the matters made the subject of the indictment.

2.      In the trial of the alleged co-conspirators, the Hamakers, a jury found no fraud in connection with the Hamakers' work on Mr. Patterson's farm.

3.      The district judge presiding over the Hamakers' trial, the Honorable Karon Bowdre, found the Government's evidence was insufficient to find the Hamakers guilty of any conspiracy with Mr. Patterson in connection with Mr. Patterson's farm.

4.      The evidence reflects Mr. Patterson paid over $5 million dollars for the construction of his house.

5.      Mr. Patterson has already been severely punished, due to his loss of his positions with the Bank, the unlikelihood that he will ever be able to work in the banking industry again, his loss of most of his assets, and the foreclosure of his house and farm.

6.      Community Bank has received, through foreclosure, the benefit of all work done in the construction of Mr. Patterson's house, including work done by Morgan City Construction and J&M Materials.

7.      Mr. Patterson has no prior criminal history.

8.      Aside from the conduct made the subject of this indictment, Mr. Patterson has been a good citizen and is a person of good character.

9.      The fact of Mr. Patterson's conviction, the loss of his positions with the Bank, and loss of most of his assets, including his house and farm, has afforded adequate deterrence so that a lengthy prison sentence is not necessary to afford adequate deterrence, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to protect the public from further crimes of Mr. Patterson.

10.      Mr. Patterson is not a threat to the public due to his advanced age, failing

health, and the fact that this conviction precludes him from ever being employed in the banking industry again.

11.     A lengthy prison sentence would be in conflict with one of the stated purposes of sentencing, i.e., to permit a defendant to receive needed medical care in the most effective manner.  A lengthy prison sentence would disrupt Mr.  Patterson's medical care for his advanced lymphoma disease and would disrupt his relationship with the doctor who has been treating him for over a year.

12.     Mr.  Patterson's medical condition is incurable and tends to reoccur after treatment.  He needs continuing monitoring by his physician and will need aggressive treatment when his condition reoccurs.

13.     A lengthy prison sentence for Mr.  Patterson would create an unwarranted sentence disparity between Mr.  Patterson and the Hamakers who were found guilty of similar conduct.

14.     A lengthy prison sentence for Mr.  Patterson would create unwarranted sentence disparities between Mr.  Patterson and other defendants who have recently been found guilty and sentenced for fraudulent conduct, including several defendants found guilty of fraud and conspiracy to defraud in connection with HealthSouth Corporation.

15.     A sentence of a combination of six months of incarceration to be served in a half-way house, followed by one year of home detention, and five years of supervised release is a sufficient sentence under all of the circumstances to provide a just punishment for Mr.  Patterson's conduct.

**Conclusion**

Section 3553(a) mandates that the court impose a sufficient sentence, but not greater than necessary to comply with the purposes of sentencing. A lengthy period of incarceration is not necessary to fulfill those purposes. Among those purposes are to afford adequate deterrence and to protect the public from further crimes of the defendant. Those purposes have already been achieved in that Mr. Patterson has been removed from the Bank and will never be in a position to work in the banking industry again. He has lost not only the "fruits" of the alleged crime, but has lost almost all of his assets. As reflected in the Presentence Report, he has a negative net worth of almost $400,000 and a negative monthly cash flow. Most significantly, he has forever lost his good name and reputation. Any bank officer looking at what happened to Ken Patterson would easily be deterred even if he were placed on straight probation. His past background of responsible and honest citizenship and no prior criminal convictions are further evidence that no future violations are likely.

The Probation Officer's focus solely on the Sentencing Guidelines is not in accordance with Booker. In the post Booker era the probation officer's presentence report if it is to have any meaning must also examine and discuss the factors in 18 U.S.C. §3553. Clearly, a lengthy period of imprisonment as suggested in the Presentence Report is not consistent with the purposes of sentencing or the factors outlined in 18 U.S.C. §3553. There are clearly less stringent alternatives than a lengthy period of imprisonment.

The Court is mandated by the Supreme Court's decision in Booker to follow the

sentencing factors in Section 3553(a).  Upon doing so the Court is urged to impose a

sentence of a combination of six months of incarceration to be served in a half-way house

to be followed by one year of home detention, and five years of supervised release or some

similar combination.  Such a sentence would secure the ends of justice.

Dated this   9th   day of December, 2005.

                      WILLIAM N. CLARK
                      GERALD L. MILLER
/s/      KEITH E. BRASHIER      
                      Attorneys for Defendant
                      Kennon R. Patterson, Sr.

**OF COUNSEL**:
REDDEN, MILLS & CLARK
940 Financial Center
505 20th Street North
Birmingham, Alabama 35203
(205) 322-0457 - office
(205) 322-8481 - fax

**CERTIFICATE OF SERVICE**

       I hereby certify that on December   9  , 2005, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system which will send notification of such filing to the
following:

William C. Athanas, Esq.
Fraud Section, Criminal Division
U.S. Department of Justice
1801 4th Avenue North
Birmingham, AL  35203


James O'Kelley, Esq.
2001 Park Place North
Suite 300
Birmingham, Alabama 35203

J. Stephen Salter, Esq.
2107 Fifth Avenue North
Suite 100
Birmingham, Alabama 35203

Jeffery L.  McDaniel
Senior U.S. Probation Officer
U.S. Probation Office
P.O. Box 1037
Florence, Alabama 35630

<u>/s/ GERALD L.  MILLER</u>
OF COUNSEL